## Mumma, Appellant *v.* Mumma.

Argued March 12, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Earl V. Compton,* with him *Compton & Handler* and *Homer L. Kreider,* for appellant.

*Walter R. Sohn,* for appellee.

OPINION BY HIRT, J., July 19, 1951:

The parties were married on June 27, 1941, at Evanston, Illinois, the home of the defendant. It was a second marriage for both of them. Plaintiff then was 55 years old; defendant was thirteen years younger. At the time of final separation of the parties they were living in a large and well appointed house on Front Street in Harrisburg which plaintiff bought after the marriage. Defendant left the common home on December 27, 1945 with her young son for her accustomed winter stay with her parents in Florida. She has never returned to the Harrisburg home. On October 11, 1948, plaintiff filed his complaint in divorce alleging that defendant deserted him on June 1, 1946, a date subsequent to the time when she normally would have returned from Florida. A second charge of indignities to his person was later withdrawn. Since the separation of the parties, in a non-support proceeding brought by defendant, the court after extended hearings ordered the present plaintiff to pay his wife $100 per week for her support. Plaintiff has fully complied with the order. The Master, based on findings reflecting a painstaking analysis of the voluminous testimony, concluded that defendant's failure to return to the common home was legally justified in that plaintiff was chargeable with indignities in his treatment of her, and further that the facts indicate a consensual separation and do not support the charge of desertion. It was the opinion of the lower court also that plaintiff had not met the burden on him of proving a wilful and malicious desertion; and in dismissing the complaint, the court therefore did not find it necessary to decide whether the

alleged indignities visited upon the defendant by her husband justified the separation. From an independent appraisal of this record we find ourselves in accord with the conclusions of the lower court. It is not necessary for us to determine whether the defendant suffered such indignities as would have entitled her to a divorce if she were the complainant. She does not defend on that ground. On the contrary in spite of plaintiff's treatment of her, she, throughout this proceeding, protested affection for her husband and an ever-willingness to return to him. Her sincerity in that respect could easily have been tested by plaintiff but it was not. The separation at its inception admittedly was by consent; in our view the plaintiff is responsible for his wife's failure to return; there was no desertion.

Defendant's seven-year-old son, with the consent of plaintiff unreservedly given, came with her to live in the home provided by plaintiff in Harrisburg. Defendant had an adult son who also lived in the home as a member of the household. For perhaps a year the new alliance was reasonably successful. In the succeeding years there was dissensions and discord. Plaintiff attributed most of the trouble with his wife to the conduct of her young son. He was most unfair in his attitude toward the boy. The child was normally well behaved but plaintiff almost from the very first magnified a series of trivial incidents and became vituperative in condemnation of the boy and of the defendant for not controlling his conduct. For example, plaintiff became angry because the parking device on the boy's bicycle left marks, on warm days, in the asphalt pavement of the driveway; and at the hearing in this case, five years after the event, he still querulously referred to streaks on the linoleum of the kitchen floor caused by the boy in sliding his feet on the smooth surface. Other acts of the boy which aroused his displeasure were just as insignificant and unimportant. Plaintiff never tried to

establish a sympathetic relationship with the boy. He called him "Junior" but never addressed him by name and he admitted that on occasion, when incensed, he referred to the boy as that "damned kid" or "damned brat". There is no real merit in his complaint that his wife ignored his requests that she discipline her child. Plaintiff's lack of understanding and tolerance for the boy was a symptom and not the cause of his waning ardor for his second marriage and its ultimate failure.

Plaintiff's state of mind preceding and during the period of the final separation is a fact of importance in this case, bearing on the issue of desertion. Specific incidents in addition to those above referred to, throw light upon that question. On an evening in March 1945 an unnamed woman called by telephone. Defendant answered the call and about the same time plaintiff responded on the extension in his bedroom. The conversation overheard by defendant raised the question in her mind as to the moral standards of the caller and her relations with the plaintiff in the past. Plaintiff admitted that he recognized the woman's voice and that she talked as if she had been drinking. This telephone call was the source of heated discussions. And in November of 1945 the subject came up again, and during an acrimonious discussion plaintiff said to his wife, referring to the anonymous caller: "She is just as good as you are any day. She doesn't do anything you don't do". The defendant replied: "You can't talk to me like that, Walter", and slapped him. In the physical encounter which followed, both received minor injuries. From September 1945 to December 1945 relations were strained and during that period the plaintiff excluded his wife from his life and indicated that he would be glad when she went to Florida. Plaintiff closed off a section of the house to which he had retired and barred his wife from coming into his rooms by locking the doors. She left for Florida on December 27, 1945,

certainly with her husband's consent, and took her son with her. During her stay there she received a few curt notes from plaintiff scribbled on scraps of paper and only one letter in which he in the main repeated his complaints as to past conduct of her son with special reference to an alleged threat of the son to do him physical violence when plaintiff struck his mother in November 1945. A subsequent exchange of letters on the subject did not improve the relations of the parties.

The master found upon credible evidence, which we also accept, that when defendant called her husband from Florida by telephone on April 14, 1946, about returning to the home in Harrisburg he said in substance: "You can go back to Evanston with your mother", and further: "Julie, I would hate to hang up on you, but if you hang on all night I am not going to tell you to come back". The defendant on leaving for Florida took only her summer clothing with her and all of the circumstances clearly indicate her intention to return to her home in Harrisburg. Shortly after the above telephone call, defendant drove to her mother's home in Evanston as requested and remained there. At the non-support hearing held on October 28, 1946, an effort was made by counsel for plaintiff, herein, and by the court to have him declare categorically whether he was willing to have his wife return to him. Four pages in this record, contain his evasive and equivocal replies. And the court, for the record interpreted his answer to the question, as "I don't know". And while in this proceeding he testified that after defendant left Florida he was willing to receive her back into his home, his conduct and prior statements to her belie his words.

The testimony clearly establishes that plaintiff suggested the separation and not only consented to, but by his conduct encouraged its continuance throughout the statutory period. In *Ziegenfus v. Ziegenfus,* 159 Pa. Superior Ct. 521, 49 A. 2d 275, we stated the applicable

226

principle thus: "The burden was upon libellant to establish by clear and satisfactory proofs that the desertion was not only wilful and malicious on the part of respondent, but that it continued so to be, and that it was without the consent or encouragement of libellant; there must have been an actual abandonment of matrimonial cohabitation, with intent to desert, and this must have been wilfully and maliciously persisted in, without cause, for two years. Devlin v. Devlin, 134 Pa. Superior Ct. 21, 23, 3 A. 2d 196; Mertz v. Mertz, 119 Pa. Superior Ct. 538, 540, 180 A. 708." We restated and reaffirmed the rule of the *Ziegenfus* case in *Latour v. Latour*, 162 Pa. Superior Ct. 75, 56 A. 2d 332, as settled law.

Plaintiff has not met the burden upon him of proving wilful and malicious desertion by the respondent, as contemplated by the Divorce Act of May 2, 1929, P.L. 1237, §10, as amended, 23 PS §10 and he is not entitled to a decree as prayed for.

The order dismissing the complaint is affirmed.