## Holt, Appellant, *v.* Holt.

548

Argued March 25, 1952. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross, Arnold and Gunther, JJ.

James J. Davis, Jr., with him David Chew Stephenson and Pepper, Bodine, Stokes & Hamilton, for appellant.

Earl G. Harrison, with him Schnader, Harrison, Segal & Lewis, for appellee.

Opinion by Hirt, J., April 16, 1952:

Plaintiff was a Naval Aviation Cadet when he married the defendant in 1939. He then was 28 and she 23 years of age. He has made service in the Navy his career and now has the rank of Commander. For about six years following the marriage, the parties lived near Philadelphia while plaintiff was stationed at the Philadelphia Navy Yard. In September 1944 he was transferred to the U.S.S. Antietam which was being fitted out at the Newport Naval Station, and following a shakedown cruise of eight weeks, left on the ship for the South Pacific in May 1945. In March 1946 plaintiff at his wife's request arranged for her transportation from Haverford where they had last lived in Pennsylvania to Carmel, California. Two months later, on

a rumor that she contemplated breaking up the marriage, he secured emergency leave and flew to California where he saw the defendant on May 26, 1946. Their relations were strained. Plaintiff was successful in securing a transfer to Washington, D.C., and left Carmel on June 29, 1946. He has been stationed in Washington, but for a year and six months prior to bringing this action his domicile has been in Philadelphia. In his complaint he charged defendant with indignities as ground for divorce, and also with desertion persisted in since May 30, 1946. The case was heard by Judge SLOANE of the court below and on findings that the plaintiff had not sustained either charge, the complaint was dismissed. The decree will be affirmed.

We accept plaintiff's testimony as credible against the denials of the defendant and her attempts to explain away her acts of misconduct on which plaintiff relied to establish the charge of indignities. But even with that advantage his proofs fall short of sustaining the charge. In general it may be accepted as established that beginning with defendant's effort, soon after the marriage, to correct some of plaintiff's habits and mannerisms in the home which she found annoying, she developed a habitually querulous attitude toward him, manifested by open criticism of his manners and deportment and at times in public to his embarrassment; she complained also about his late hours on war work and was angered at his refusal to tell her the nature and the scope of his employment with the Navy although she knew it to be confidential; she handled all of plaintiff's income and mismanaged his financial affairs by running up large accounts at stores with the result that on at least two occasions he was brought before his commanding officer to explain why bills had not been paid; defendant neglected her house-

hold duties and frequently failed to prepare necessary meals; after plaintiff went to sea in 1945 she failed to save money from plaintiff's pay allotted to her, for the payment of his Federal income taxes with the result that he was several thousand dollars in arrears on the date of the separation; of a Sunday afternoon defendant occasionally ran the vacuum cleaner although she knew it interfered with plaintiff's enjoyment of the symphony hour on the radio; defendant was responsible for cessation of sexual relations after January 1945. Other complaints are too trivial for comment with this one exception: much of the unhappiness in the home arose from the fact that plaintiff has been sterile from the inception of the marriage. Defendant wanted a child above all else and frequently chided plaintiff, accusing him of failing to take the treatments which had been prescribed for him to accomplish a cure. He had consulted a number of medical men and had followed their advice with reasonable fidelity as to the treatments prescribed, without beneficial result. In our view it is established in this record that plaintiff is incurably sterile. Defendant's criticisms of plaintiff on that ground therefore were unwarranted, although in our view excusable, to some extent at least, under the circumstances.

From a consideration of plaintiff's testimony even in its most favorable aspects, we are in agreement with Judge SLOANE that although there was nagging, quarreling, and other irritating conduct on the part of the defendant yet the cumulative effect of the incidents complained of has failed to establish a clear and satisfactory case as to indignities. There is insufficient proof of a humiliating course of conduct manifesting settled hate and estrangement, rendering plaintiff's condition intolerable and life burdensome. That is the standard of proof essential to a decree of divorce for

indignities. *McKrell v. McKrell,* 352 Pa. 173, 180, 42 A. 2d 609; Cf. *Blose v. Blose,* 163 Pa. Superior Ct. 322, 61 A. 2d 370.

As to the charge of desertion also, although we accept plaintiff's testimony as credible, as against that of the defendant, yet it is clear that he has not made out a case by essential proofs. After May 1945 while plaintiff was in the South Pacific defendant's letters to him indicated a change in her attitude toward him. One year later, in May 1946, he received word from his mother that defendant had told her that she had come to California to get a divorce from him. It was on this information that plaintiff obtained emergency leave and flew from Tsingtao, China to California. At Carmel they discussed the reasons for the disintegration of their marriage. Plaintiff testified that he tried to persuade her to resume living with him but she then was determined on divorce. She had already consulted a lawyer and told him to do the same. He spent only the first night after his arrival in Carmel in her apartment and then went to his mother's home where he stayed until he left for Washington on June 29, 1946. As to what he said to defendant before leaving for Washington, he testified: "I asked her if she wanted to go, and she stated she did not want to go"; and on cross-examination, he said: "A. As far as I can recollect, I met her on the street and told her about the orders, and asked her if she wanted to go, and she said no, that she wanted to live in Carmel. Q. That is all there was to it? A. Yes, sir. Well, I told her at the same time,— if she wanted to go, she was entitled to transportation to the east coast. Q. At any time thereafter, did you ever ask her to go to Washington? A. I think I was talking with her a day or so before I left for Washington, and I asked her at that time. Q. You think you talked to her? A. I know I talked to her, but I am not

sure what day it was. It was a day or so before I left. Q. Can you tell us what the conversation was? A. If she wanted to go to Washington with me, I would be glad to have her, and I would be willing to pay her transportation, or anything else, if she would come; and she said no, she wanted to stay in Carmel". That is the whole of the conversation with defendant on which he relied to establish desertion.

From plaintiff's own testimony it is clear that in his talks with defendant he did not intend to go further than to inquire whether she wanted to go to Washington, although he did signify a willingness to arrange for her transportation if she decided to come. Not once did he make a bona fide request, much less a demand, that she accompany him to Washington. And in her reply to his inquiry, although she expressed a preference to remain in Carmel, she did not categorically refuse to go with him. Her failure to offer to join him in Washington under the circumstances was not desertion.

Unquestionably it was plaintiff's legal right to change the matrimonial domicile either by his voluntary action or, as in this case, by reason of orders of his superior officers in the Navy. And as a general rule before a wife can be chargeable with desertion it must be shown not only that she refused without cause to join her husband at his new location, but also that he provided a suitable place of residence for her there. *Horn v. Horn*, 17 Pa. Superior Ct. 486; *Libshitz v. Libshitz*, 156 Pa. Superior Ct. 118, 39 A. 2d 463; *Ziegenfus v. Ziegenfus*, 159 Pa. Superior Ct. 521, 49 A. 2d 275. But in this case we do not attach importance to the fact that he did not actually provide a home for respondent in Washington. He had short notice of the actual transfer and immediate housing in Washington was difficult to obtain even at premium prices. In any

view setting up a home would have been vain, and our finding that there was no desertion is predicated squarely on plaintiff's failure to request defendant to move to Washington and join him there. Nevertheless it is significant bearing upon plaintiff's good faith in his contention that he intended to establish a new home in Washington that he never even informed defendant of his Washington address much less requested her after his arrival there to come on from Carmel.

It is a fair inference from this record that neither of the parties was willing to rejoin the other in a revival of the marriage. The defendant went to California to get a divorce. She changed her mind however and instead brought an action for separate maintenance. She later abandoned the action, probably because of the policy of the Navy, which she construed as insuring her an allotment of one-third of her husband's pay although separated from him. What the husband did is also significant. In June 1947, more than one year after the date of the desertion as alleged in the complaint in the present case, he brought an action for divorce in California on the sole ground of "extreme cruelty". He did not charge desertion although wilful desertion, persisted in for one year, was ground for divorce under laws of that state.

In our view of the testimony in this case both parties acquiesced in the separation; acquiescence implies consent and a consentable separation cannot impute desertion to either party. Cf. *Mumma v. Mumma,* 169 Pa. Superior Ct. 221, 82 A. 2d 274.

Decree affirmed.