Wiggins *v.* Wiggins, Appellant.

Argued March 19, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Pershing N. Calabro,* for appellant.

*Michael C. Rainone,* for appellee.

OPINION BY DITHRICH, J., July 17, 1952:

Plaintiff and defendant entered into a common-law marriage in April, 1936. Plaintiff was then about 28 years of age and the defendant was about 32. They entered into the marriage relationship in Swedesboro, New Jersey, lived for a short time in Woodstown, New Jersey, and moved to Philadelphia in 1944. While living in New Jersey plaintiff was steadily employed, and defendant occasionally employed, as a field hand. They are both members of the colored race. After moving to Philadelphia plaintiff obtained employment in the Sun Shipyard in Chester, Pennsylvania, and was steadily employed there as an assistant fireman until sometime in 1946 when he secured a position as a janitor at the Pennsylvania Working Home for Blind Men, 36th Street and Lancaster Avenue, Philadelphia, where he was still working at the time of the hearing.

While they were living in New Jersey defendant twice left plaintiff and went to Philadelphia, her native habitat, and in September or October of 1944 she went there to stay. Plaintiff joined her there the following December and they lived together on and off until September, 1945, when they finally separated. Plaintiff then obtained a room at 4239 Ogden Street, Philadelphia, where he was living when he filed his libel in

divorce. He was granted a decree on the ground of indignities and cruel and barbarous treatment.

Appellant bases her appeal first on lack of jurisdiction, contending that plaintiff had not complied with the one-year residence requirement of The Divorce Law of 1929. Upon our review of the testimony we agree with the learned court below that "While the master might have permitted a wider latitude for cross-examination as to the plaintiff's residence, . . . the evidence is overwhelming that plaintiff was a bona fide resident of Pennsylvania within the requirements of the divorce statutes." Her complaint that the master did not make a satisfactory investigation of plaintiff's residence is nullified by the fact, as stated in the master's report, that his finding as to plaintiff's residence "is based not only [on] the evidence of the witnesses [including that of the landlady] but the fact that the plaintiff was present at 4239 Ogden Street, Philadelphia, Pa., when he [the master] called there to verify his address personally."

We are satisfied that the record discloses full and complete observance of the rule that "the court or master on its behalf, should take up the investigation of any fact, the determination of which is material to the issue involved." *Bonomo v. Bonomo,* 123 Pa. Superior Ct. 451, 454, 187 A. 222; *Cortese v. Cortese,* 163 Pa. Superior Ct. 553, 63 A. 2d 420.

Appellant's other complaint is that plaintiff-appellee failed to sustain the burden of proving the charges alleged in his complaint. While we have made our requisite independent review of the testimony, we have been aided by an extensive and thorough report of the master and an able and comprehensive opinion by the court below, sitting en banc on defendant's exceptions to the master's report.

As we said in an opinion by RENO, J., in *Smith v. Smith,* 157 Pa. Superior Ct. 582, 583, 584, 43 A. 2d

371: "Although we are not concluded by a master's findings upon credibility, his judgment upon that vital factor is entitled to the fullest consideration, *Lyons v. Lyons,* 116 Pa. Superior Ct. 385, 176 A. 792, and especially in a contested case." *Bobst v. Bobst,* 357 Pa. 441, 452, 54 A. 2d 898; *Silfies v. Silfies,* 168 Pa. Superior Ct. 421, 423, 79 A. 2d 130. And this is especially true where there is scant corroboration of the testimony of the parties.

The master stated in his report that he "was greatly impressed by the plaintiff and believes that he was truthful." On the other hand, "The testimony of the defendant was inconsistent and contradictory and [she] was very evasive on many points in cross-examination and her credibility is gravely doubted." Without the benefit of seeing or hearing the parties, we have reached the same conclusion as the master as to their credibility.

Plaintiff testified that their difficulties arose about a month after they started living together, due to his wife's excessive drinking; that she would frequently go off on drunken sprees; that drunk or sober her language toward him was vile and abusive; that she gambled and consorted wth gamblers and when she won she would start drinking and would not sober up until she had drunk up all her winnings; that on one occasion when intoxicated she threw a water pitcher at him and, as a result of that disturbance, the farmer in whose bungalow they were living requested them to leave. It was then that they moved from Swedesboro to Woodstown. It was in the busy farming season and for a while she joined her husband in working in the field, but he testified, "When she found out she couldn't take all the money—my money and hers, too—she didn't want to work any more . . . She worked a while and when she felt like going in town to get something to drink she would go in town and I would find her there."

Her course of conduct as to drinking and gambling and heaping abuse upon plaintiff continued after they moved to Philadelphia and, as we have indicated by a few excerpts from the testimony, was of such a nature as to constitute indignities.

There were two outstanding attacks made by defendant on plaintiff, neither of which she denied, that clearly justified a divorce on the ground of cruel and barbarous treatment. On one occasion she struck plaintiff over the head with a beer bottle, cutting his ear "half in two," and necessitated his going to a hospital for treatment. On another occasion when he remonstrated with her for driving their automobile while intoxicated, she seized a shotgun, which was always kept loaded and standing in the corner of their farmhouse, and fired it at him. She missed him, "the target spouse" so designated by Judge MAWHINNEY, but shot a hole through the door. Plaintiff testified that she came so close to hitting him that she would have done so had she been sober. We agree with the court below that, if there was no other misconduct on her part, that single act of cruelty, so endangering the plaintiff's life, would be sufficient to justify a divorce. *May v. May*, 62 Pa. 206; *Eberly v. Eberly*, 154 Pa. Superior Ct. 641, 645, 36 A. 2d 729; *Edelman v. Edelman*, 165 Pa. Superior Ct. 485, 69 A. 2d 165.

Only one other question remains to be disposed of. The shotgun incident was not specified in the bill of particulars but no objection was made until all the testimony concerning it was in the record and even then no motion was made to strike it. Furthermore, the question of its admissibility was not raised in the exceptions to the master's report and need not be considered here. But even if it were inadmissible there is sufficient other evidence in the record to justify the decree.

Decree affirmed.