Boyles *v.* Boyles, Appellant.

Argued March 22, 1955. Before RHODES, P. J., ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ. (HIRT, J., absent).

*Robert C. Haberstroh,* for appellant.

*John D. Rively,* for appellee.

OPINION BY ERVIN, J., July 21, 1955:

Verna G. L. Boyles, the defendant, has appealed from the decree of the Court of Common Pleas of Blair County granting a divorce a vinculo matrimonii to her husband, George R. Boyles, the plaintiff.

The libel was filed by plaintiff on May 18, 1940, and alleged as grounds for divorce (1) indignities to the person, and (2) desertion. After extended hearings the master, in his report filed January 27, 1941, concluded that the charge of indignities to the person had not been sustained by the evidence, but he recommended that a divorce be granted on the charge of desertion.

The court below refused to sustain exceptions filed by the defendant to the report of the master on January 29, 1941, which were not brought before the lower court for consideration and disposition until July 2, 1954, and held that the defendant had wilfully and maliciously deserted and absented herself from the habitation of the plaintiff for and during the term and space of two years and upwards. This appeal by the defendant followed.

It is our duty to examine the evidence de novo for the purpose of determining whether the charges alleged in the libel have been sustained. *Bobst v. Bobst,* 357 Pa. 441, 54 A. 2d 898. While we are not concluded by the master's findings, his judgment upon the question of credibility is entitled to the fullest consideration; and this is especially true when his report, as in the case at bar, presents a searching analysis of the

testimony. *Wieber v. Wieber,* 175 Pa. Superior Ct. 533, 106 A. 2d 854.

The parties were married on December 21, 1921 in Altoona, Pennsylvania, and lived there until January 10, 1922, at which time they moved to Philadelphia, where they remained until May 30, 1922. They then returned to Altoona, where they lived until May 14, 1923, when they moved to Greenwood, Logan Township, Blair County, Pennsylvania, where they lived until September 19, 1925, the date of their separation. The plaintiff was employed in the blacksmith shop of the Pennsylvania Railroad Company at Altoona. The parties were forty-three years of age at the time divorce proceedings were begun in 1940 and there had been two children born of the marriage, a girl, Helen Lucille, born October 9, 1922, and another girl, Corrine Eleanor, born January 14, 1924. After the separation of the parties the defendant obtained an order in the Court of Quarter Sessions of Blair County against the plaintiff for the support of herself and their children in the amount of $25.00 per month, which was subsequently increased to $40.00 per month. At the time of the hearing the plaintiff was $900.00 in arrears on this order.

The nature of the indignities charged by the plaintiff is well summarized in the averments contained in the bill of particulars, as follows: "The indignities existing between March 16, 1923, and September 18, 1925, consisted in the constant and continuous picking, nagging and complaining of his said wife, the above named respondent. The above named Respondent also accused the above named Libellant with being friendly and intimate with other women, which accusations are absolutely unfounded.

"In addition thereto the said Respondent never performed her duties as a married woman, and that your

said Libellant was never in her bedroom or had sexual relations with the said Respondent for a period of better than a year before she deserted him."

Plaintiff testified that his married life was unhappy and disagreeable; that his wife didn't want him to associate with anybody; that she didn't like anybody he liked; that she was always "growling" about any company he kept and never was pleased with anything he did for her. He said that living with her made his life intolerable, miserable, unbearable and burdensome; that her attitude toward him was very "harsh and cruel" nearly all the time. He also testified that his wife refused to go out with him in the evening. He testified that he would go to the corner store where he would find somebody to talk to him, that she wouldn't do so because when she was not busy on the telephone she was reading or sewing, "when she wasn't nagging." He admitted that insofar as the defendant was concerned she did the cooking, kept the house clean, mended clothing for the children, and conducted herself properly in maintaining the home. He also stated that when he testified the defendant was "very harsh and cruel towards him" he based his conclusion on the fact that "she wouldn't hug and kiss me." Furthermore, while he testified that she manifested no love or affection for him and refused to cohabit with him, assigning the reason therefor that she didn't want to have children, he admitted that during the short period they lived together two children were born to the union and the testimony further showed that on another occasion the defendant was pregnant but that a miscarriage took place.

Testimony of plaintiff's witnesses concerning the nagging of his wife was vague and general. The brother of the plaintiff testified that defendant nagged the plaintiff by requesting him to do things around the

house. He stated, "She wanted to have the house painted; she wanted different things done around home."

It would serve no useful purpose to detail other testimony relating to the nagging of the plaintiff. The defendant denied she nagged the plaintiff. Also, she testified that she had sexual relations with the plaintiff up to the time she left, the last occasion being about three weeks before their separation.

We have held that domestic infelicity does not constitute legal cause for divorce. *Matovcik v. Matovcik*, 173 Pa. Superior Ct. 267, 98 A. 2d 238. Also, nagging, petty quarrels and lack of affection do not in themselves constitute indignities to the person such as to warrant a decree of divorce. *Blose v. Blose*, 163 Pa. Superior Ct. 322, 61 A. 2d 370. And it has been held that refusal to have sexual intercourse is not sufficient ground for a divorce. *Schwarzkopf v. Schwarzkopf*, 176 Pa. Superior Ct. 441, 107 A. 2d 610.

Furthermore, where a husband so conducts himself with other women that the wife has just reason to be suspicious, her accusations of infidelity furnish no support to a charge by the husband of indignities to the person. *Oliver v. Oliver*, 172 Pa. Superior Ct. 600, 94 A. 2d 124. In the instant case there was ample justification for the finding of the master, sustained by the court below, that the husband had been guilty of acts which would tend to make his wife suspicious of her husband's conduct with other women. Though the plaintiff denied that he was ever unfaithful to his wife a careful review of all the evidence confirms the testimony of the defendant that in 1923 her husband became involved with a girl, Helen Curtis, whose father brought a charge of fornication and bastardy against him asserting he was the father of her illegitimate child, born on January 1, 1924, two weeks before

the birth of defendant's second child. Defendant testified that her husband admitted to her that he was responsible for the girl's condition and that she told him she "would help pay this off providing he would pick himself up and raise our children in a home that was fit for children to be raised in." When asked: "Q. Did you attempt to get along after that?", she replied, "A. Yes, I stayed eighteen months after the Helen Curtis charge was brought against him." There was other testimony by Clarence Elmer Wogan, called as a witness by defendant, who testified that he and plaintiff, during the years 1922 to 1925 went out with women in his car and that the plaintiff accompanied women other than his wife and on one or two occasions the plaintiff told the girl he was accompanying that he was a single man. It thus clearly appears that defendant was justifiably suspicious of her husband's activities and when considered with other evidence that the plaintiff was somewhat indifferent to domestic life and frequently was absent from the marital domicile, there was ample ground for her suspicions. Plaintiff's charge of indignities was therefore properly found not to be sustained by the evidence.

Although the plaintiff failed to establish his entitlement to a divorce on the ground of indignities, he is entitled to a decree on the ground of desertion.

The Act of May 2, 1929, P. L. 1237, §10, as amended, 23 PS §10, provides that it shall be lawful for the injured and innocent spouse to obtain a divorce whenever the other spouse "Shall have committed wilful and malicious desertion, and absence from the habitation of the injured and innocent spouse, without a reasonable cause, for and during the term and space of two years; . . . ."

It is admitted by the defendant in her testimony that she packed up and left the marital domicile on

September 19, 1925, intending to terminate the marriage relationship. When she left she took the parties' two minor children and most of their furniture with her and went to live with her parents. The manner of her leaving fully establishes the wilfulness and malice necessary to support the charge of desertion. See *Sharpe v. Sharpe*, 177 Pa. Superior Ct. 76, 110 A. 2d 804. The plaintiff, though he admitted defendant had told him some time previously she was going to leave, had no knowledge of her intention to leave and discovered that she, the children, and practically all the furniture were gone when he returned from a short trip into Altoona to buy a chandelier, having been gone from home several hours. The separation was without plaintiff's consent and was thereafter continuous and uninterrupted for the statutory period.

The question thus presented is: Did the defendant have reasonable cause for withdrawing from the marital domicile?

Where there has been a separation for the required period, the burden is on the defendant to prove consent or a reasonable cause for withdrawing from the matrimonial domicile. *Totino v. Totino*, 176 Pa. Superior Ct. 108, 106 A. 2d 881.

The defendant testified as follows: "Q. Mrs. Boyles, you stated that you left the home in September, 1925. State upon this record the reason for your leaving that home? A. Due to his treatment and due to the fact that he associated with other women. It was intolerable. I could not stand it. Q. State upon the record the names of the women to your knowledge that Mr. Boyles associated with during the time you lived with him? A. Helen Curtis and Jane Sheriff, or Holland. Q. You know this of your own knowledge, or what somebody has told you? A. Nobody told me, I know it."

As noted above and admitted in appellee's brief, the testimony indicates that the plaintiff did become involved with a girl by the name of Helen Curtis in 1923 or 1924. However, the defendant resumed marital relations with the plaintiff for a period of 18 months thereafter and by her own admissions condoned plaintiff's adultery. Her condonation is an absolute remission of the conjugal offense, and a complete bar to a divorce on the ground of adultery. *Bowden v. Bowden,* 161 Pa. Superior Ct. 150, 53 A. 2d 892; *Best v. Best,* 161 Pa. 515, 29 A. 1026; see 23 Temple Law Quarterly 376. However, subsequent to her condonation of plaintiff's adultery with Helen Curtis, there is no substantial evidence that plaintiff was again intimate with other women, or guilty of any other conduct which would constitute sufficient cause for her leaving the marital domicile. The other woman named by the defendant, Jane Sheriff, who was also known as Jane Holland, was called by the defendant as a witness. She admitted she knew the plaintiff but denied any association with him. She denied also any conversation with defendant in which she allegedly admitted intimacies with the plaintiff although the defendant testified that she visited the witness and was told by her that she would be glad to testify in this case because George Boyles had wrecked her home, caused her husband to desert her and, because of her relations with plaintiff, had twice become pregnant. In view of this conflicting testimony the master properly determined to disregard the testimony of Jane Sheriff as a basis for any conclusion of fact.

The defendant also testified on cross-examination as follows: "Q. You never saw him with any other women, did you? A. I didn't see him. Q. Everything that you believed that you knew came to you by hearsay testimony? A. No, that is not true, because he got

letters and had telephone conversations with them. Q. Did you ever see letters or hear telephone conversations? A. Yes, and I have answered the phone and got him to the phone. . . . Q. Now, as to the Holland woman, you never saw him associate with the Holland woman? A. No, but I read letters he got from her. Q. When was that? A. When we lived in Greenwood. Q. Do you have those letters? A. I do not have them, no, but they are on file."

The only evidence offered to support the defendant's contention that her husband was intimate with Mrs. Sheriff, or Holland, was to the effect that she read letters from her to the plaintiff and that he received telephone calls. These letters were not proved nor offered in evidence despite defendant's testimony that they "are on file." Testimony relating to telephone calls does not disclose whether the voice was either male or female, there is no evidence as to the nature of the conversations that plaintiff had on these occasions, and in the absence of any further details, this evidence affords no basis whatever for any imputation of unfaithfulness on the part of the plaintiff. It is apparent the evidence offered by defendant to justify her withdrawal from the marital domicile is not such clear and convincing evidence as would warrant the entry of a divorce decree in her favor on either the grounds of adultery or indignities; nor is it sufficient to justify her leaving the plaintiff. In order to justify her withdrawal from the marital domicile she must prove by a preponderance of the evidence facts that would entitle her to a decree in divorce. *Dougherty v. Dougherty,* 166 Pa. Superior Ct. 219, 70 A. 2d 411. This she has not done.

Pertinent and applicable here is the following statement of Judge Ross in *Sacks v. Sacks,* 172 Pa. Superior Ct. 543, 552, 94 A. 2d 147: "The 'reasonable

cause' which is justification for husband or wife in quitting and abandoning the other, is that and only that which would entitle the separating party to a divorce. Boughter v. Boughter, 164 Pa. Superior Ct. 574, 67 A. 2d 812; Darrall v. Darrall, 164 Pa. Superior Ct. 113, 63 A. 2d 693. Although defendant's testimony reveals a quarrelsome and unhappy marriage in which her suspicions of plaintiff's attentions to other women played a predominant part, it fell short of proof of adultery. She thus failed to bring herself within the rule of Copeland v. Copeland, 155 Pa. Superior Ct. 102, 38 A. 2d 364, that a woman with an adulterous husband is not guilty of desertion when she refuses to live with him or requires him to leave her home. Evidence on her behalf, in our view, does not constitute such preponderance as would entitle her to a decree of divorce. Partleton v. Partleton, 169 Pa. Superior Ct. 485, 82 A. 2d 684."

Although the conduct of the plaintiff with other women was sufficient to arouse the suspicions of the defendant and to justify her accusations of infidelity and plaintiff was therefore not entitled to a divorce on the ground of indignities to the person because of unfounded accusations of the defendant, it must be conceded that defendant had just cause to be suspicious of her husband because of his admitted adultery with Helen Curtis. In considering whether the conduct of plaintiff was sufficient to warrant the withdrawal of the defendant from the marital domicile, we must eliminate consideration of the admitted adultery as it was condoned by the defendant and such condonation amounts to a complete remission of the offense.

Furthermore, the evidence of plaintiff's affairs with other women, besides Helen Curtis, is, as noted above, far from sufficient to justify the granting of a decree to the defendant should she have sought a divorce on **either the ground of adultery or indignities.**

The contention of defendant that plaintiff should be denied a divorce on the ground of desertion because he is not an injured and innocent spouse is without merit. Admittedly the plaintiff is not blameless in his marital behavior but divorce is not restricted to those complainants who are utterly without fault. As stated by Judge Ross in *Newman v. Newman,* 170 Pa. Superior Ct. 238, 244, 85 A. 2d 613, quoted with approval in *Rech v. Rech,* 176 Pa. Superior Ct. 401, 411, 107 A. 2d 601: "There is, of course, the requirement that the plaintiff in a divorce action qualify as the 'innocent and injured spouse' (Act of May 2, 1929, P. L. 1237, sec. 10, as amended, 23 PS 10); *but this does not mean that the plaintiff must be wholly free from fault.*" (Emphasis added)

In *Rech v. Rech,* supra, Judge WOODSIDE said, at page 411: "In the case before us, the defendant having been found guilty of adultery, the plaintiff is an 'innocent and injured spouse' unless the evidence shows he was guilty of adultery, cruel and barbarous treatment or indignities, in other words conduct which would have entitled the defendant to a divorce from the plaintiff had she been an innocent and injured spouse. That plaintiff's conduct may have been 'indiscreet' or 'suspicious' is not sufficient. Neither would it be sufficient if he were guilty of acts of indignities and cruelty which were not of sufficient severity to entitle the defendant to a divorce on such grounds."

Also, the fact that the defendant obtained a support order is not conclusive of the fact that she is not guilty of desertion and will not prevent the husband from securing a divorce on such grounds. *Keller v. Keller,* 160 Pa. Superior Ct. 480, 52 A. 2d 373.

We have reviewed the record, as we are required to do, and it is our independent conclusion that the

testimony is sufficient to show that the defendant-wife wilfully and voluntarily deserted her husband for the statutory period without a reasonable cause.

Decree affirmed.

HIRT, J. did not participate in the consideration and decision of this case.