## Greer *v.* Greer, Appellant.

Argued April 14, 1955. Before HIRT, ROSS, WRIGHT, WOODSIDE, and ERVIN, JJ. (RHODES, P. J., and GUNTHER, J., absent).

644

*Kenneth W. Behrend,* for appellant.

*Joseph P. Passafiume,* for appellee.

OPINION BY ERVIN, J., July 21, 1955:

The husband brought an action in divorce against his wife alleging (1) indignities to the person and (2) desertion. The master recommended a decree of divorce on the desertion charge. The lower court dismissed exceptions and entered a decree of divorce a.v.m. The wife has appealed to this Court.

The parties were married February 14, 1942. Ten months later the plaintiff entered the Navy and was discharged therefrom in 1946. While in the Navy he made an allotment for his wife and sent her additional sums of money over and above the allotment. After discharge from the service the parties lived together in Mahoneytown, Pennsylvania, for approximately one month and then moved to New Castle, Pennsylvania, where they lived for several months and in May 1946 they purchased a home in Ellwood City, Pennsylvania, where they lived together until sometime in June of 1949. Plaintiff, after work on a Friday afternoon, left for a week-end visit at his mother's home in West Virginia. He had visited her frequently before and on this occasion the wife knew where he was going. The next day she caused a warrant to be issued

for his arrest for desertion and nonsupport. The husband returned to work on Monday and was arrested while at work.

For approximately four months thereafter the parties did not live together. At first the husband moved to his brother's home in Ellwood City. Shortly thereafter, the plaintiff was furloughed, due to a lack of seniority, from his job at Union Drawn Steel Company in Beaver Falls, Pennsylvania. He was without funds and he went to his mother's home in West Virginia. In October, 1949, he was arrested for failure to pay the support order. While in jail he and his wife became reconciled and each agreed to "straighten out" and in October, 1949 the parties returned to their home in Ellwood City. They lived together until February 8, 1950. Plaintiff was unable to find regular employment in Ellwood City or vicinity and on December 16, 1949 found employment at the Monongahela Connecting Railroad in Pittsburgh, Pennsylvania. The plaintiff stayed with his sister, Mrs. Caskey, in Pittsburgh, going home to Ellwood City on the days that he was not working. Between December, 1949 and February 3, 1950 plaintiff tried to find housing in Pittsburgh for his family. Meanwhile, the home in Ellwood City had been sold and the purchasers moved in, causing a difficult situation for the defendant and her two children. Plaintiff found an apartment at 96 Dawn Avenue, Pittsburgh, Pennsylvania, and on or about February 6, 1950 requested the defendant to come and look at it. She refused to do so and told him to go ahead and rent it and that she would move to Pittsburgh. On February 8, 1950 the defendant moved her household furnishings to the Dawn Avenue apartment. The plaintiff arrived home from work on that date and found his household furnishings in the apartment. Shortly thereafter the defendant arrived and told the

plaintiff that the apartment was not suitable. According to Mrs. Fabus, the owner of the property, and plaintiff's sister, Mrs. Caskey, the defendant said she would not live with the plaintiff at Dawn Avenue or any place else. Thereafter the defendant lived with her two children at her mother's residence at 1109 Wingate Street, Pittsburgh. The defendant, her mother and her sister testified as to the unfitness of the apartment. The plaintiff, Mrs. Fabus, the owner, Mrs. Angelina Batalo, who had been the tenant of the apartment for two years prior, and plaintiff's sister, Mrs. Caskey, all testified as to the fitness of the apartment. The plaintiff and his sister and her husband had painted the kitchen and were endeavoring to improve the apartment prior to defendant's arrival. Plaintiff testified that the Dawn Avenue apartment was a temporary expedient and that he did not intend that his family should live there forever.

Following the refusal of the defendant to live at the apartment, the defendant in March 1950 had plaintiff arrested again on a charge of desertion and nonsupport which was settled upon his agreement to give her all of the furnishings in the apartment. She removed the furniture and the plaintiff then moved out of the apartment. The parties have remained apart ever since and neither has made any effort to reconcile.

It is the duty of a wife to live with her husband in any home provided by him which is reasonably suitable according to his means. The choice of a home by the husband is controlling if made in good faith. *Beck v. Beck,* 163 Pa. 649, 30 A. 236; *Pfeiffer v. Pfeiffer,* 154 Pa. Superior Ct. 154, 156, 35 A. 2d 551; *Sobotowich v. Sobotowich,* 165 Pa. Superior Ct. 60, 67 A. 2d 637; *Holt v. Holt,* 170 Pa. Superior Ct. 547, 87 A. 2d 790.

Where the wife fails to comply with this duty, she is guilty of desertion and no further offer of reconcil-

iation need be made by the husband. *Ruf v. Ruf,* 168 Pa. Superior Ct. 632, 635, 82 A. 2d 280; *Sacks v. Sacks,* 172 Pa. Superior Ct. 543, 548, 94 A. 2d 147.

We have read the entire record in this case and we are convinced that the husband's selection of the Dawn Avenue apartment was made in good faith and when the wife refused to live with her husband in that apartment she deserted him. He was under no further duty to seek a reconciliation. He did not consent to her desertion and he was powerless to prevent it. Her subsequent acts, including the arrest of the plaintiff for the purpose of obtaining all of the furniture, clearly indicate that the defendant did not attempt nor want a reconciliation with the plaintiff. There was a duty upon her to seek an appeasement. *Procopio v. Procopio,* 174 Pa. Superior Ct. 157, 100 A. 2d 115. In justification of her desertion she now asserts that she had a good cause for divorce when she refused to move into the apartment. She endeavored to make out a cause on the grounds of indignities to the person and cruel and barbarous treatment. We have read the entire record and agree with the master and the lower court that she failed to meet the burden of proving that she had a cause for divorce on the date she deserted her husband. Without detailing the charges made by her, we point out that the alleged acts were committed prior to the reconciliation, which occurred in October of 1949. A careful reading of the record fails to reveal any acts of cruelty or any acts of indignity thereafter. Assuming arguendo that the past indignities and acts of cruelty alleged by the defendant are true, she would not be justified in refusing to follow and live with her husband at the new Pittsburgh domicile. All of the acts of which she complains were committed before the separation of the parties on May 30, 1949 and were followed by a period of peaceful recon-

ciliation commencing in October, 1949 and lasting until February 8, 1950. This constituted a conditional forgiveness or conditional condonation. While condonation of the violation of the marital duties and obligations is conditioned on the future good conduct of the offending spouse, a subsequent offense on his or her part revokes or nullifies the condonation and revives the original offense as a cause for divorce. Voluntary cohabitation with complete forgiveness is generally held to condone prior cruelty so long as the offense is not repeated. *Hollister v. Hollister,* 6 Pa. 449; *Augenstein v. Augenstein,* 45 Pa. Superior Ct. 258; *Bortell v. Bortell,* 78 Pa. Superior Ct. 201, 203; *Epstein v. Epstein,* 93 Pa. Superior Ct. 398; *Andrew v. Andrew,* 143 Pa. Superior Ct. 68, 17 A. 2d 673; *Moore v. Moore,* 7 D. & C. 423. If, however, the indignities and oppressive acts cease, and the parties continue together and remain at peace without a renewal of the cruelty and indignities, it would be difficult to justify a divorce based on long by-gone acts. *Reed v. Reed,* 28 Dist. 511, 513.

Our independent examination of the record, which consists of 228 typewritten pages, confirms the master's conclusion, summed up as follows: "In the case under consideration now, the defendant, by her acts at the time of the desertion and subsequent thereto, clearly showed that her desertion was wilful and malicious, and that it continued so to be and that it was without the consent or encouragement of the plaintiff."

While the master's findings are advisory only, where credibility is involved his findings in that regard are to be given the fullest consideration and should not be lightly disregarded. *Sacks v. Sacks,* supra, at p. 551.

In our opinion, the defendant has failed to meet the burden of proving that her separation was either

consensual or justifiable and consequently the plaintiff is entitled to a divorce on the ground of desertion.

Decree affirmed.