**Toni M. STURPE, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 5, 2003.

Decided May 5, 2003.

Toni M. Sturpe, petitioner, pro se.

Paul R. Jordan, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN, Judge, SIMPSON, Judge and LEAVITT, Judge.

OPINION BY President Judge COLINS.

Toni Sturpe petitions for review of the order of the Unemployment Compensation Board of Review (Board) denying her benefits under Section 402(b) of the Unemployment Compensation Law (Law),[1] which provides that an employee is ineligible for benefits when her unemployment is the result of her voluntarily terminating her employment without a necessitous and compelling reason.

Sturpe began working for U.S. Airways as a buyer on October 24, 1988. Her husband was employed with Delta Airlines in Atlanta, Georgia, from which employment he was laid off sometime in 1994. He was recalled to work with Delta in 1996 in Fort Lauderdale, Florida, where he worked for about a year before transferring to Atlanta, Georgia for about two years, and then to Cincinnati, Ohio. Sturpe remained employed with U.S. Airways until on December 5, 2001, when she resigned, effective December 21, 2001, in order to relocate to Kentucky to be with her husband. Sturpe had no employment

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937), 2897, *as amended*, 43 P.S. § 802(b).

commitment in Ohio or Kentucky. Continuing work with U.S. Airways was available to Sturpe in Pennsylvania.

Based on the evidence, the referee concluded that Sturpe failed to meet her burden of establishing that she left her employment for a necessitous and compelling reason because she failed to establish economic hardship in maintaining separate residences or an insurmountable commuting distance. The Board affirmed, adopting the referee's findings and conclusions.

■ On appeal, Sturpe argues that the referee's findings contain a number of errors and that he erred when he concluded that she failed to meet her burden of proving a necessitous and compelling reason for leaving her employment with U.S. Airways. Our review is limited to determining whether an error of law was committed, constitutional rights were violated, or necessary findings of fact are supported by substantial evidence. *Gibson v. Unemployment Compensation Board of Review*, 760 A.2d 492 (Pa.Cmwlth.2000). Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion. *Feinberg v. Unemployment Compensation Board of Review*, 160 Pa. Cmwlth. 524, 635 A.2d 682 (1993), *petition for allowance of appeal denied*, 539 Pa. 670, 652 A.2d 840 (1994). We must examine the evidence in the light most favorable to the party that prevailed before the Board, which in unemployment cases, is the ultimate fact finder. *Gibson.*

■ First we address Sturpe's allegations of errors in the factual findings. The alleged errors are as follows: 1) the date on which Sturpe was first employed with U.S. Airways, i.e., 1988 rather than 1998; 2) that her husband was "recalled" to work in Florida in 1996, and not "transferred"; and 3) that she remained in Pennsylvania until March 2002 and remained employed with U.S. Airways until March 2002. The Board acknowledges that the record contains no evidence that Sturpe remained in Pennsylvania until March 2002, and it acknowledges the typographical error in her employment date. We agree with the Board that these errors are harmless and have no effect on the outcome of this case.

■ Next we address the issue of whether Sturpe established necessitous and compelling reason for terminating her employment with U.S. Airways. An unemployment compensation claimant who has voluntarily terminated her employment may still be entitled to benefits if she shows that she left for a necessitous and compelling reason. *Livingston v. Unemployment Compensation Board of Review*, 702 A.2d 20 (Pa.Cmwlth.1997). "Necessitous and compelling reason" refers to real and substantial circumstances that force the employee to terminate employment and that would compel a reasonable person under those circumstances to act in the same manner. *Id.* Whether an employee had a necessitous and compelling reason to leave her employment is a question of law reviewable by this Court. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977).

■ Where a claimant terminates employment to join a relocating spouse, the claimant must demonstrate an economic hardship in maintaining two residences or that the move has posed an insurmountable commuting problem. *Glen Mills Schools v. Unemployment Compensation Board of Review*, 665 A.2d 561 (Pa. Cmwlth.1995); *Hammond v. Unemployment Compensation Board of Review*, 131 Pa.Cmwlth. 166, 569 A.2d 1013 (1990). The claimant must also show that her resignation was the direct result of her spouse's relocation, i.e., the necessity to relocate must be caused by circumstances beyond the control of the claimant's spouse

and not by personal preference, and the decision to relocate must be reasonable and be made in good faith. *Id.* These principles reflect the General Assembly's intent to permit the obligation of joining one's spouse, under the proper circumstances, to constitute cause of a necessitous and compelling nature to leave one's employment. *Id.* The desire to maintain the family unit is not by itself sufficient cause to terminate one's employment and receive benefits. *Schechter v. Unemployment Compensation Board of Review,* 89 Pa.Cmwlth. 24, 491 A.2d 938 (1985).

In *Hammond,* which is factually similar to the present case, the claimant and his wife maintained separate residences and endured commuting problems for one year when he was in Pennsylvania and she was in Mississippi. Because the commuting problem and successful maintenance of separate residences predated his spouse's move to Oregon and the claimant's termination of his employment to join his spouse in Oregon, we upheld the denial of benefits on the ground that the claimant failed to prove the requisite hardship as a result of his spouse's relocation.

■ The result in *Hammond* was consistent with our earlier decision in *Schechter,* wherein the claimant and her husband maintained separate residences in Pennsylvania and Arlington, Virginia, for three years from 1980 to 1983 before the claimant quit her employment to join her spouse. In September 1982, the couple had their first child, and the family moved to Virginia in December 1982. At the end of her maternity leave in January 1983, the claimant resigned her employment. Although the move was motivated by the couple's belief that maintaining separate households was no longer economically feasible and their desire to raise their child together, we upheld the denial of benefits on the grounds that the claimant failed to prove the necessary hardship, noting that the purpose of the law is not to finance a transition in family living arrangements that results in a temporary self-imposed hardship. 491 A.2d at 940. We also rejected the claimant's argument that a daily commute of 130 miles to Pennsylvania constituted an insurmountable transportation problem as a misstatement of the law. "Insurmountable commuting problems which give rise to an award of benefits occur when the employer relocates his business or transfers the employee, and the employee/claimant is then faced, through no fault of his own, with a burdensome commute." *Id.*

After reviewing the evidence, we must agree with the Board's conclusion that Sturpe failed to meet her burden of establishing necessitous and compelling reason to terminate her employment to join her spouse. Sturpe's testimony establishes that she and her husband had been maintaining separate living arrangements at the time he was furloughed in 1994 and again after he was recalled in 1996 until the end of 2001.[2] When questioned about her reasons for resigning and relocating to Ohio, Sturpe mentioned the importance of being a family with her husband where he was employed and his higher income. She testified that the couple bought a home in Cincinnati.[3] She said that she was commuting to Cincinnati on weekends, but that commute became more onerous after the terrorist attack on September 11, 2001, in

---

2. Sturpe testified that he was laid off in 1994 and that he was working in Atlanta, Georgia at the time he was recalled. The record is unclear as to when he left Pennsylvania.

3. Sturpe's appeal to the referee averred that the home was purchased in March 2001, but that fact is otherwise not of record.

light of flight delays and cancellations and increased security measures.

Sturpe offered no evidence of economic hardship in maintaining separate living arrangements or that her move to Ohio caused insurmountable commuting problems. As in *Hammond* and *Schechter*, the commuting problem and the maintenance of separate households predated Sturpe's husband's move to Ohio by at least six years. Since 1996 and before, Sturpe had been faced with commuting as far as Florida and Georgia in order to see her husband on weekends, and more recently with a commute to Ohio. The commuting problems alleged in the present case involve the more onerous commute to spend weekends together, and such commuting problems do not give rise to an award of benefits. On the record before us, we are unconvinced that Sturpe's voluntary termination of her employment was based on anything other than personal preference and the desire to maintain the family unit.

Accordingly, we affirm the Board's decision to deny benefits.

### ORDER

AND NOW, this 5th day of May 2003, the order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.

### DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority holds that Toni M. Sturpe (Claimant) is not entitled to unemployment benefits because she failed to establish that her spouse's relocation to Cincinnati resulted in an insurmountable commute between Cincinnati and her U.S. Airways job in Pittsburgh. In other words, despite the fact that Claimant's commute was via commercial airline and the commute became "impossible" [1] after the World Trade Center was attacked by terrorists on September 11, 2001, the majority denies Claimant benefits because Claimant and her spouse were able to maintain separate residences and commute back and forth prior to that time.[2] (Majority op. at 243–44.) For the reasons that follow, I disagree.

### I. History of Section 402(b)

#### A. "Family Obligations" and "Good Cause"

The original 1936 version of section 402(b) of the Unemployment Compensation Law (Law) [3] stated that an employee was ineligible for compensation for any week in which his or her unemployment was due to voluntarily leaving work. *See Pittsburgh Pipe and Coupling Company v. Unemployment Compensation Board of Review*, 401 Pa. 501, 165 A.2d 374 (1960) (hereinafter referred to as *Savage* ). However, in 1942, the legislature amended section 402(b) of the Law to state that an employee shall be ineligible for compensation for any week in which his or her unemployment is due to voluntarily leaving

---

1. The uncontradicted evidence of record establishes the feasibility of Claimant's commute between Pittsburgh and Cincinnati became "impossible" after September 11, 2001, due to: (1) flight delays; (2) cancellations due to heightened security; (3) long security lines; (4) additional searches; and (5) flight and schedule reductions. (O.R., Exh. 3.) The majority states only that Claimant's commute became "more onerous" after September 11, 2001. (Majority op. at 6.)

2. I note that Claimant is not seeking benefits for the period prior to September 11, 2001. Thus, the fact that Claimant and her spouse were able to commute prior to that time is irrelevant.

3. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(b).

work without "good cause." *Id.* Our superior court interpreted the 1942 amendment to mean that the legislature was permitting purely personal reasons to constitute "good cause" for voluntarily leaving one's employment. *Department of Labor and Industry v. Unemployment Compensation Board of Review,* 154 Pa.Super. 250, 35 A.2d 739 (1944).

In 1946, our superior court attempted to establish a standard for determining whether a claimant's personal reasons constitute "good cause" for voluntarily leaving one's employment. *Bliley Electric Company v. Unemployment Compensation Board of Review,* 158 Pa.Super. 548, 45 A.2d 898 (1946) (hereinafter referred to as *Sturdevant* ). The court stated:

"Voluntarily" and "involuntarily" are antonymous and therefore irreconcilable words, but the words are merely symbols of ideas, and the ideas can be readily reconciled. Willingness, willfulness, volition, intention reside in "voluntarily," but the mere fact that a worker wills and intends to leave a job does not necessarily and always mean that the leaving is voluntary. Extraneous factors, the surrounding circumstances, must be taken into the account, and when they are examined it may be found that the seemingly voluntary, the apparently intentional, act was in fact involuntary. A worker's physical and mental condition, his *personal and family problems,* the authoritative demand of legal

duties—these are circumstances that exert pressure upon him and imperiously call for decision and action.

When therefore the pressure of *real* not imaginary, *substantial* not trifling, *reasonable* not whimsical, circumstances *compel* the decision to leave employment, the decision is voluntary in the sense that the worker has willed it, but involuntary because outward pressures have compelled it. Or to state it differently, if a worker leaves his employment when he is *compelled* to do so by *necessitous* circumstances or because of legal or *family obligations,* his leaving is voluntary with good cause, and under the act he is entitled to benefits. The pressure of necessity, of legal duty, or *family obligations,* or other overpowering circumstances and his capitulation to them transform what is ostensibly voluntary unemployment into involuntary unemployment.

*Sturdevant,* 45 A.2d at 903 (italics in original, other emphases added, footnote omitted). Thus, in 1946, a claimant who voluntarily left employment because of real, substantial and reasonable "family obligations" had "good cause" for quitting and was entitled to benefits.[4]

### B. Excluding Family Obligations—Part 1

Seven years after *Sturdevant,* in 1953, the legislature amended section 402(b)

---

4. *Sturdevant* was a spouse relocation case. Applying the standard that it had articulated, the court stated:

When we approach the problem of a married woman who leaves her work to join her husband we realize immediately that we are in the presence of a compulsion which readily supplies a personal reason and a good cause. Under our law, it is the legal right of the husband to select the marital domicile and it is the legal duty of the wife to reside with him. Hence, when a

husband moves the marital domicile to a distant point where he secures work and his wife voluntarily leaves her work to accompany him, her compliance with the duty which the law casts upon her satisfies the requirements of "good cause."

*Id.* When the court decided *Sturdevant,* if a wife failed to live with her husband in any home provided by him which was reasonably suitable according to his means, the wife was guilty of desertion. *Greer v. Greer,* 178 Pa.Super. 643, 115 A.2d 794 (1955).

again, stating that "marital, filial and domestic circumstances" shall not be deemed "good cause" for voluntarily leaving one's employment. *Savage,* 401 Pa. at 506, 165 A.2d at 376. However, this amendment survived only two years. In 1955, the legislature deleted this provision and amended the phrase "good cause" to read "cause of a necessitous and compelling nature." *Id.* Our supreme court commented that the legislature thereby indicated its intent to adopt the judicial construction of "good cause" set forth in *Sturdevant.*[5] *Id.* Thus, once again, claimants who voluntarily left their employment because of real, substantial and reasonable "family obligations" were entitled to benefits.

## C. Excluding Family Obligations—Part 2

In 1959, the legislature added subsection (b)(2) to section 402, making an employee who leaves his or her employment "to accompany or to join his or her spouse in a new locality" or "because of a marital, filial or other domestic obligation or circumstance" ineligible for compensation *unless,* for six months prior to the quit or the filing of a claim, the employee was the major source of support for his or her family *and* the employment was not within a reasonable commuting distance from the new locality. *Crumbling v. Unemployment Compensation Board of Review,* 14 Pa.Cmwlth. 546, 322 A.2d 746, 747–48 (1974.)

Section 402(b)(2) was the law for approximately twenty years; it was declared unconstitutional in 1978 and was repealed in 1980. With respect to the constitutionality of the provision, this court held in *Wallace v. Unemployment Compensation Board of Review,* 38 Pa.Cmwlth. 342, 393 A.2d 43 (1978), that section 402(b)(2) violated the equal protection and due process rights of "family obligation" claimants.[6] This court explained that the provision violated the equal protection clause because it singled out "family obligation" claimants for separate treatment without any rational justification. *Wallace.* Section 402(b)(2) of the Law violated the due process clause because it deprived "family obligation" claimants of a significant property right without an opportunity to prove a necessitous and compelling cause. *Id.*

The constitutionality of section 402(b)(2) of the Law was raised before our supreme court in *Richards v. Unemployment Compensation Board of Review,* 491 Pa. 162, 420 A.2d 391 (1980). However, the court declined to rule on the issue because it was possible to resolve the matter before it on non-constitutional grounds.[7] *Id.* Although our supreme court never addressed whether the "family obligation" exclusion was unconstitutional, the legislature repealed section 402(b)(2) in 1980 based on this court's decision in *Wallace.*[8]

Since 1980, there have been no additional legislative changes to section 402(b) with respect to "family obligations." Section 402(b) is now "identical to the 1955 version

---

5. Later, this court would remark that the terms "good cause" and "cause of a necessitous and compelling nature" are synonymous. *Kleban v. Unemployment Compensation Board of Review,* 73 Pa.Cmwlth. 540, 459 A.2d 53 (1983).

6. The court referred to "family obligation" claimants as "domestic quit" claimants. *See e.g., Wallace,* 393 A.2d at 47.

7. The court held that the claimant was entitled to benefits because the predominant reason for her leaving her employment was economic necessity, *not* joining her spouse in another locality. *Richards.*

8. *See* section 14 of the Act of July 10, 1980, P.L. 521; *see also Hauser v. Unemployment Compensation Board of Review,* 57 Pa. Cmwlth. 418, 426 A.2d 734 (1981).

that the Supreme Court considered in *Savage*." *Kleban v. Unemployment Compensation Board of Review*, 73 Pa.Cmwlth. 540, 459 A.2d 53, 55 (1983). Thus, under the current statute, purely personal reasons, which include "family obligations," may constitute cause of a necessitous and compelling nature for leaving one's employment.[9] *Savage*, 401 Pa. at 504, 165 A.2d at 376 (quoting *Sturdevant*, 45 A.2d at 903).

## II. "Spouse Relocation"

One category of the "family obligation" line of cases is the "spouse relocation" case. Under *Savage* and *Sturdevant*, an employee who follows a spouse to a new locality may have cause of a necessitous and compelling nature for leaving employment. The question is whether the pressure on the employee to follow the spouse is so real, substantial and reasonable that the employee is compelled to leave his or her employment. *Savage; Sturdevant.* Since 1980, however, this court has established more specific requirements for claimants in "spouse relocation" cases.

## A. Wheeler

In *Trubelhorn v. Unemployment Compensation Board of Review*, 112 Pa. Cmwlth. 125, 535 A.2d 253, 255 (1987), this court stated that its "seminal case" involving "spouse relocation" was *Wheeler v. Unemployment Compensation Board of Review*, 69 Pa.Cmwlth. 201, 450 A.2d 775 (1982). In fact, every "spouse relocation" case decided by this court since *Wheeler* either relies upon *Wheeler* or another case that relies upon *Wheeler*.[10]

*Wheeler* is the first case to state that, where an employee leaves employment to accompany a spouse to a new locality, the following spouse must show an economic hardship in maintaining two residences or that the move has resulted in an insurmountable commuting problem. *Wheeler*.[11] In formulating the "economic hardship in maintaining two residences" rule, *Wheeler* relied upon *Richards*, a section 402(b)(2) case allowing benefits where economic necessity is the predominant reason for the claimant quitting a job to join a spouse in a new locality.[12] With respect to

---

9. Our supreme court stated:
   In determining whether [a necessitous and compelling cause] exist[s], the test is not whether the claimant has taken himself out of the scope of the [Law], but *whether the [Law] specifically excludes him from its provisions.* That is what is meant by a liberal and broad construction.
   *Savage*, 401 Pa. at 509, 165 A.2d at 378 (emphasis added). Thus, once the legislature removed the specific exclusion for "family obligation" claimants, such claimants were covered by the Law.

10. The Pennsylvania Supreme Court has not decided a "spouse relocation" case since *Richards*, which was prior to the repeal of section 402(b)(2) in 1980.

11. *Wheeler* also held that the spouse's relocation must be caused by circumstances beyond the control of the spouse and must not be brought about by purely personal preference. *Wheeler*. Thus, in cases where the spouse's

relocation is purely personal preference, the preservation of the family unit, though socially desirable, does not, by itself, constitute necessitous and compelling cause for leaving employment. *Id.*

12. The claimant in *Richards* was a school bus driver who earned $68 per week. The claimant's spouse worked on a horse farm, earning $500 per month and free housing with a rental value of $150 to $200 per month. The claimant's spouse was fired, and the family was forced to relocate forty-five miles away to a rent-free house provided by a relative. The issue before the court in *Richards* was whether a claimant is entitled to benefits under section 402(b)(2) if *one* of the claimant's *several* reasons for leaving employment was the desire to join her spouse. The court held that the claimant was entitled to benefits under section 402(b)(2) because the *predominant* reason for the claimant leaving her job was economic necessity, i.e., needing the rent-free house. *Richards*.

the "insurmountable commuting problem" rule, *Wheeler* relied upon *Weinstock v. Unemployment Compensation Board of Review*, 46 Pa.Cmwlth. 545, 406 A.2d 855 (1979), a transportation difficulties case.[13]

Because the two tests were derived from separate and distinct lines of cases, they have independent validity, i.e., if the claimant proves one of them, the claimant need not prove the other. In this regard, the *Wheeler* rule differs significantly from the section 402(b)(2) exceptions, which required claimants joining their spouses to prove *both* economic hardship *and* commuting problems.[14] *Wheeler* requires only that claimants joining spouses prove *either* economic hardship in maintaining two residences *or* insurmountable commuting problems. Thus, pursuant to *Wheeler*, if an employee is compelled by pressure that is real, substantial and reasonable to follow a spouse to a new locality and the move results in an insurmountable commute, the employee is entitled to benefits even if, financially, the couple could have maintained two residences.[15]

### B. Sturpe

The only question in this case is whether Claimant established that her commute via commercial airline between Cincinnati and her U.S. Airways job in Pittsburgh became insurmountable following the terrorist attacks on the World Trade Center on September 11, 2001.

Claimant worked for U.S. Airways in Pittsburgh, and her husband worked for Delta Airlines in Ohio. The couple maintained residences in both Cincinnati and Pittsburgh from March of 2001 to December of 2001. During this time, Claimant commuted back and forth from Cincinnati to Pittsburgh. This was not an insurmountable commute until the terrorist attacks on September 11, 2001, disrupted the normal operations of the airline industry. The record evidence indicates the following:

> My husband and I purchased our first new home together in Cincinnati, March 2001, where my husband is based.... After the purchase of our home in Cincinnati, I would fly from Pittsburgh to Cincinnati on my weekends to visit and spend time with my husband as a family. With all of the turmoil in the airline industry[,] commuting back and forth became more arduous[,] especially since September 11, 2001....
>
> In November 2001, I requested and was permitted by my management at U.S. Airways to work an adjusted five-day, forty-hour workweek. I would work longer hours during the week, leave a few hours early on Friday and come in an hour late on Monday. Due to the changes that September 11, 2001, brought[,] such as, but not limited to, flight delays and cancellations due to heightened security, long security lines, additional searches, flight and schedule

---

I note that, because *Richards* is a section 402(b)(2) case in which the issue presented was the proper interpretation of section 402(b)(2), and because section 402(b)(2) was repealed in 1980, I question this court's reliance on *Richards*.

**13.** As stated in *Weinstock*, 406 A.2d at 856, this court "has consistently held that transportation difficulties constitute necessitous and compelling reasons for an employe's voluntary termination when they present an insurmountable problem to that employe."

**14.** *See Unemployment Compensation Board of Review v. Jenkins*, 23 Pa.Cmwlth. 127, 350 A.2d 447 (1976).

**15.** In other words, the *Wheeler* rule does not *require* families to live apart just because they are financially able to do so. The rule recognizes that, although *some* families might choose to live apart, other families would find that living apart places real, substantial and reasonable pressure on their marital and family relationships.

reductions, *the feasibility of commuting back and forth became impossible* even with the adjusted work schedule.... I proposed to my management telecommuting (working on-line from home with my own computer), working condensed workweeks, or working part-time, but these options were not feasible options to my management and therefore [were] denied.

(O.R., Exh. 3) (emphasis added). When Claimant's efforts to preserve her employment failed, on December 21, 2001, Claimant resigned from her position with U.S. Airways.

This undisputed evidence establishes that Claimant's commute from Cincinnati to Pittsburgh became *impossible* after September 11, 2001. Where a claimant establishes that a commute is impossible, certainly the commute is insurmountable. Having established an insurmountable commute, Claimant is entitled to benefits.[16]

Accordingly, unlike the majority, I would reverse.

---

**16.** In concluding otherwise, the majority relies on *Hammond v. Unemployment Compensation Board of Review,* 131 Pa.Cmwlth. 166, 569 A.2d 1013 (1990), and *Schechter v. Unemployment Compensation Board of Review,* 89 Pa.Cmwlth. 24, 491 A.2d 938 (1985). However, neither of those cases is dispositive here.

In *Hammond,* the claimant and his wife were separated and living apart in separate residences in Mississippi and Pennsylvania. When the claimant's wife accepted a job in Oregon, the claimant quit his job in Pennsylvania because he believed that his wife would divorce him and take custody of their three children. This court held that the claimant was not entitled to benefits because the claimant's commuting problems existed prior to his wife's move to Oregon and because the claimant chose to have those commuting problems. *Hammond.* Here, however, Claimant's com-

muting problems did *not* exist prior to September 11, 2001, and Claimant did *not* choose to have those commuting problems. Therefore, *Hammond* is not dispositive.

In *Schechter,* the claimant worked in Pennsylvania and her husband worked in Virginia. The couple maintained separate residences in those states, spending time together on the weekends. After the couple's first child was born, the claimant quit her job to join her husband and to raise their child in Virginia. This court held that the claimant was not entitled to benefits because the insurmountable commute was the result of her choice to move to Virginia. *Schechter.* Here, Claimant's insurmountable commute was *not* the result of a choice she made; rather, it was the result of the September 11, 2001, terrorist attacks. Therefore, *Schechter* is not dispositive.