# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

UnitedHealthcare of Pennsylvania, Inc.,   :
                                    :
                 Petitioner   :
                                      :
            v.                       : No. 1117 C.D. 2020
                                      : Argued: February 7, 2022
Pennsylvania Department of Human   :
Services (Office of Open Records),     :
                                      :
                 Respondent  :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE LORI A. DUMAS, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                                FILED: December 15, 2022


           In this appeal, UnitedHealthcare of Pennsylvania (United) petitions for review of the Final Determination of the Office of Open Records (OOR) denying, and dismissing as moot in part, its appeal of its request for records from the Pennsylvania Department of Human Services (DHS) under the provisions of the Right-to-Know Law (RTKL).[1] After careful review, we affirm.


## I.

           In order to understand the claims raised in the instant appeal, a brief recounting of a number of related cases is necessary. This Court has recently noted:

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

[The HealthChoices Medicaid (HealthChoices) Program] is Pennsylvania's mandatory managed care program for physical health services to Medicaid participants. Managed care providers (MCOs) administer the HealthChoices Program in five Pennsylvania zones - Northeast, Southeast, Lehigh-Capital, Northwest, and Southwest. [DHS] contracts with multiple MCOs to administer HealthChoices Program benefits and services in each zone. United is one of those MCOs.

* * *

In September 2015, [DHS] issued Request for Proposals (RFP) 06-15 for new contracts for administration of the HealthChoices Program in all five zones. United submitted a proposal for all five zones. However, [DHS] did not select United to negotiate for new contracts.

United claim[ed that DHS] stated that in evaluating applications under RFP 06-15, it applied what it called a "heritage factor" in evaluating the proposals by all applicants. *See Aetna Better Health of P[ennsylvani]a, Inc. v. Dep[artmen]t of Hum[an] Serv[ice]s* (Pa. Cmwlth., No. 351 M.D. 2016, filed July 19, 2016), slip op. at 4-5[.] [DHS] applied the heritage factor to favor any existing contractor MCO having at least a 25% market share of Medicaid participants, reasoning that the disruption likely to arise from cessation of such an applicant's services would outweigh some shortfall in the rest of the applicant's evaluation scores. *Id.* However, [DHS] did not disclose in the RFP that it would be applying the heritage factor as part of its evaluation process.

Another applicant, Aetna Better Health of Pennsylvania, Inc. (Aetna), filed a bid protest alleging the heritage factor was a secret criterion used to deprive Aetna of new contracts and to favor other MCOs despite Aetna's higher proposal scores. [DHS] responded by asserting that Aetna could not protest based on that issue. Aetna then filed a petition for review. This Court enjoined the RFP 06-15 procurement and ordered that if [DHS] chose to review Aetna's bid protest, that review should be by an

2

independent hearing officer not employed by [DHS] and not connected to the RFP. *See Aetna Better Health*, slip op. at 32.

[DHS] then withdrew RFP 06-15 and reissued it as RFP 06-15 (Reissued). United again submitted a proposal. Whether [DHS] applied the heritage factor again is unclear. However, United and other applicants filed bid protests to RFP 06-15 (Reissued), claiming that [DHS] had again applied the heritage factor in a manner designed to favor the MCOs that previously received contracts with [DHS], and that [DHS] had secret discussions with another MCO about modifying its bid proposal in order to pass [DHS's] readiness review procedure. [DHS] denied the bid protests. This Court reversed [DHS], concluding that discussions with MCOs about bid modifications and readiness review violated the RFP and the Commonwealth Procurement Code (Procurement Code)[2] because only [DHS's] designated Issuing Officer, Karen Kern [(Kern)], may engage in such discussions. *See UnitedHealthcare of P[ennsylvani]a, Inc. v. Dep[artmen]t of Human Serv[ice]s* (Pa. Cmwlth., No. 790 C.D. 2017, filed Apr[il] 10, 2018), slip op. at 27[.]

\* \* \*

In October 2019, [DHS] issued [Request for Applications 07-19 (RFA)] pursuant to the Procurement Code seeking applications for new contracts to administer the HealthChoices Program. United submitted an application for all five zones. In July 2020, [DHS] notified United that it had selected United for negotiations only in the Southeast zone. United requested a debriefing as provided under the RFA and the Commonwealth's Procurement Handbook.

United filed a series of bid protests, which were later consolidated. On February 17, 2021, the [Secretary of Human Services (Secretary)] issued the Final Determination denying United's bid protests. United filed

---

[2] 62 Pa. C.S. §§101-2311.

3

a petition for review in this Court. Several competing applicants under the RFA [] intervened in th[e] matter.

*UnitedHealthcare of Pennsylvania, Inc. v. Department of Human Services* (Pa. Cmwlth., No. 165 C.D. 2021, filed November 17, 2021), slip op. at 2-4 (footnotes omitted). Ultimately, this Court affirmed the Secretary's Final Determination denying United's bid protests under the RFA and the Procurement Code. *Id.*

## II.

With respect to the instant appeal, on July 2, 2020, United filed a request with DHS under the RTKL (First Request)[3] seeking the following relevant documents: (1) the RFA and all addenda and/or modifications; (2) all applications, bids, proposals, or other responses submitted in response to the RFA; (3) all evaluative materials or documents related to the evaluative process for responses to the RFA; (4) all internal planning or training documents related to the RFA; (5) all bid tabulations and similar documents related to the RFA; (6) internal documents, communications, and memoranda related to any decisions to select any applications for agreement negotiations; (7) internal documents, communications, and memoranda related to any decisions not to select any applications for agreement negotiations; (8) communications with any applicant after the RFA's issuance, including records related to regional collaborations; (9) any documents related to the decision to not enter into negotiations with United for the Northeast, Northwest, Southwest, and Lehigh/Capital Zones; (10) any documents relating to changes to the

---

[3] On September 18, 2020, while the proceedings were ongoing with respect to the First Request, United filed another request with DHS under the RTKL (Second Request). United's appeal of the OOR proceedings involving the Second Request is docketed in this Court at No. 245 C.D. 2021. *See UnitedHealthcare of Pennsylvania, Inc. v. Department of Human Services (Office of Open Records)* (Pa. Cmwlth., No. 245 C.D. 2021, filed December 15, 2022). The instant appeal and that appeal were not consolidated, but were argued seriately before this Court.

4

readiness-review process including the rationale for permitting MCOs to make attestations rather than meeting the standards of readiness review; and (11) any documents relating to DHS's two-year extensions of the HealthChoices Program. *See* OOR Docket No. 2020-1501 Exhibit 1 at Exhibit A; Reproduced Record (RR) at 14a-15a.

On August 10, 2020, DHS granted the request for Item (1) of the First Request, and denied the request for Items (2), (3), and (4) as exempt from disclosure under Section 708(b)(26) of the RTKL.[4] DHS also denied the request for records in Items (3), (4), and (5) listed above based on the predecisional deliberations exemption in Section 708(b)(10).[5] However, DHS also granted in part and denied

---

[4] 65 P.S. §67.708(b)(26). Section 708(b)(26) states:

> [T]he following are exempt from access by a requester under this act:
>
> * * *
>
> (26) A proposal pertaining to agency procurement or disposal of supplies, services or construction prior to the award of the contract or prior to the opening and rejection of all bids; financial information of a bidder or offeror requested in an invitation for bid or request for proposals to demonstrate the bidder's or offeror's economic capability; or the identity of members, notes and other record of agency proposal evaluation committees established under [Section 513 of the Procurement Code,] 62 Pa. C.S. §513 (relating to competitive sealed proposals).

[5] 65 P.S. §67.708(b)(10). Section 708(b)(10)(i)(A) states, in relevant part:

> [T]he following are exempt from access by a requester under this act:
>
> * * *

**(Footnote continued on next page…)**

5

in part the request for records in Items (6), (7), and (9) based on the proposal exemption in Section 708(b)(26), the predecisional deliberations exemption in Section 708(b)(10), and the personal identification information exemption under Section 708(b)(6) of the RTKL.[6] Likewise, DHS granted in part and denied in part the request for records in Item (8) based on the exemptions in Section 708(b)(6) and (10). DHS responded to the request for documents in Item (10) by stating that following a reasonable search of its records, it does not have a responsive record in its possession, custody, or control, and that it does not have a legal obligation to obtain or create the requested records under the RTKL. Finally, DHS granted in part

---

(10)(i) A record that reflects

(A) The internal, predecisional deliberations of an agency, its member, employees or officials . . . including predecisional deliberations relating to a . . . contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations.

65 P.S. §67.708(b)(10)(i)(A).

[6] 65 P.S. §67.708(b)(6). Section 708(b)(6)(i)(A) states:

[T]he following are exempt from access by a requester under this act:

* * *

(6)(i) The following personal identification information:

(A) A record containing all or part of a person's Social Security number, driver's license number, personal financial information, home, cellular or personal telephone numbers, personal e-mail addresses, employee number or other confidential personal identification number.

65 P.S. §67.708(b)(6)(i)(A).

6

and denied in part the request for records in Item (11) of the First Request based on the personal identification information exemption in Section 708(b)(6) of the RTKL. *See* RR at 22a-28a.

On August 21, 2020, United appealed DHS's response to OOR challenging DHS's partial denial of its request, and asserting that DHS failed to meet its evidentiary burden of proving that the redacted information was exempt under Section 708(b)(10) and (26). On September 3, 2020, United withdrew its request for information contained in an application that was identified as a trade secret or confidential proprietary information by another applicant.[7] On September 9, 2020, United submitted additional argument in support of its appeal, *i.e.*, that DHS treated the RFA process as a grant process, and not as a procurement process, so that the provisions of Section 708(b)(26) do not apply in this matter because it only relates to procurement documents. *See* OOR Docket No. 2020-1501 Exhibit 13; RR at 240a-41a. United also claimed that DHS's failure to identify which redactions related to which exemption left it and OOR guessing as to which requested item the redacted document is responsive, and which exemption listed in the response supports the redaction. *See id.* at 240a-41a.

On September 17, 2020, United submitted additional argument, alleging that *Payne v. Pennsylvania Department of Health*, 240 A.3d 221 (Pa.

---

[7] OOR subsequently granted the applications for Direct Interest Participant status in the appeal of other applicants, including Health Plan Partners (HPP); Pennsylvania Health and Wellness (PHW); Geisinger Health Plan (Geisinger); Vista Health Plan, and its affiliates AmeriHealth Caritas Health Plan and Keystone Family Health Plan (collectively, AmeriHealth Caritas); UPMC For You, Inc. (UPMC); and Gateway Health Plan (Gateway).

Cmwlth. 2020),[8] supported its assertion that DHS's scoring documents are not exempt as internal predecisional deliberations, and that DHS inconsistently applied the RTKL because it released a requested responsive document to a third party

[8] In *Payne*, an attorney for an applicant seeking a medical marijuana grower/processor permit submitted a request to the Department of Health (DOH) seeking the scores given by DOH's Office of Medical Marijuana (MM Office) to the application submitted by another applicant. DOH denied the request because the "scoring notes and materials" were exempt from disclosure under Section 708(b)(10)(i)(A)'s predecisional deliberations exemption and/or the MM Office's temporary regulation concerning records subject to disclosure and confidentiality under the RTKL. The attorney appealed DOH's denial to OOR, which upheld DOH's application of the exemptions. On further appeal, with respect to Section 708(b)(10)(i)(A), this Court agreed with the attorney's claim that the affidavit submitted by DOH in support of the exemption was insufficient to establish its elements. Specifically, we stated:

> "Only . . . confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice [are] protected as 'deliberative.'" It is not disputed that [DOH] itself released the score sheets and final scores of dozens of other successful and unsuccessful applicants whose applications were deemed complete. Thus, it is unclear how [DOH] can claim that such scores are confidential. In addition, to qualify to be exempted from disclosure, an agency must explain how the information withheld reflects or shows the deliberative process in which an agency engages during its decision-making. We cannot discern how the score or scores, either preliminary or final, as distinguished from the evaluation committee's notes or comments, disclose the MM Office's deliberations or deliberative process. Even if one could somehow successfully divine the deliberative process of the MM Office from the score sheet, the same would certainly be obvious from any of the dozens of other applicants' score sheets [that] were released. In sum, while the scores are internal and predecisional, they are neither confidential nor deliberative.

240 A.3d at 227-28 (citations and footnotes omitted). We also determined that "[w]hile the individual permit application reviews and notes, and perhaps even individual evaluation committee member scores, are addressed and protected by the temporary regulation . . . the temporary regulation does not extend its protections to the output of the committee as a whole." *Id.* at 228. Accordingly, we reversed OOR's order and directed DOH "to release the preliminary scores or score sheet of the evaluation committee as a whole related to [the requested] application," permitting the redaction of any "notes or comments in addition to the scores[.]" *Id.*

pursuant to another RTKL request. *See* OOR Docket No. 2020-1501 Exhibit 19; RR at 802a-04a. On September 23, 2020, United sent an email to DHS arguing that DHS's release of scoring information waived the confidentiality of the score and the underlying scoring materials because the intentional disclosure of a privileged document waives the privilege for all documents that share the same subject. *See* OOR Docket No. 2020-1501 Exhibit 25; RR at 878a.

On September 9, 2020, DHS submitted the affidavits of Kern, a Procurement Specialist in DHS's Office of Administration,[9] and Andrea Bankes

---

[9] In relevant part, Kern's affidavit states:

> 23. I responded to and interpreted [United's] RTKL requests [as enumerated above] to be asking for documents that would be included as part of the applicants' submissions and documents that would include the scoring and evaluation sheets used by the Evaluation Committee in evaluating the technical submittals of applicants' applications submitted in response to [the RFA].
>
> 24. In addition, I responded to and interpreted [United's] RTKL requests [] to be asking for other correspondence, announcements, selection memorandum, news releases, and similar documents related to the RFA[,] but not evaluation documents.
>
> 26. [DHS] has only selected applicants to enter into negotiations.
>
> 27. [DHS] sent letters notifying applicants of their selection to enter into negotiations and also notified the other applicants of their non-selection for negotiations.
>
> 28. Since agreements have not been awarded, my understanding of [S]ection 708(b)(26) of the RTKL is that, as of this date, none of the applications which contain the applicants' applications that were submitted in response to [the RFA] are "public records." Therefore, none of the documents or information that are part of the applications are "public records."

**(Footnote continued on next page…)**

9

29. [DHS] routinely receives RTKL requests for the scoring and evaluation records created and used by an evaluation committee.

30. Before reviewing the technical submittals for [the RFA], as explained above, each member of the Evaluation Committee was provided with instructions and guidance regarding the conduct of their [sic] work in evaluating the technical submittals. As such, the instructions are internal guidance for the Evaluation Committee members. Such guidance is not shared outside the Evaluation Committee and the Evaluation Committee members are advised that the Evaluation Committee materials are confidential.

31. The Evaluation Committee materials and member names are to remain confidential in order to shield the internal procurement process against external threats to its integrity for the evaluators to freely express their opinions.

32. These instructions were not developed by the Evaluation Committee[,] but used during the deliberative process.

* * *

36. After the completion of the technical evaluation, the Evaluation Committee provided the final scoring of the technical submittals to the Issuing Officer. The Issuing Officer completed the scoring by adding the Domestic Workforce bonus points to the final technical scores and then made a written recommendation to [DHS's] Procurement Officer.

37. The document created by the Issuing Officer to make this recommendation is the Recommendation for Selection Memorandum RFA 07-19 ("Recommendation Memorandum").

38. The Recommendation Memorandum contains the total score of each application and other application information for all applicants.

39. Although the Recommendation Memorandum contains the total scores of the applications, it is not developed by the Evaluation Committee for use to score and evaluate the technical submittals.

**(Footnote continued on next page…)**

(Bankes), DHS's Open Records Officer,[10] and an exemption log outlining the reasons for the exclusions and/or redactions.[11]  On September 22, 2020, DHS

40. [DHS] provided a redacted copy of the Recommendation Memorandum because it summarizes the RFA process, memorializes the results of the Evaluation Committee's work as well as sets forth the adopted recommendation.

41. [DHS] redacted the total scores of the applicants pursuant to [Section 708(b)(10)(i)(A)] and [(26)].

42. In addition, [DHS] redacted the [Small Diverse Business] commitment of the applicants pursuant to [Section 708(b)(26)] because this is proposal information taken from the applicants' submissions.

43. As stated above, no agreement has yet been awarded.  Therefore, my understanding is that [S]ection 708(b)(26) of the RTKL exempts the content of the proposals presented in the applications from the definition of "public record."

44. The scores of the technical submittals are other records that reflect the analysis and comments of the Evaluation Committee and are exempt under [Section] 708(b)(26).

45. The scores were set forth in the Recommendation Memorandum prior to the date that the memorandum was submitted for consideration and reflect the Evaluation Committee's analysis of the submitted applications.

OOR Docket No. 2020-1501 Exhibit 17 at 15-17; RR at 682a-84a.

[10] In relevant part, Bankes' affidavit states that (1) she is DHS's Agency Open Records Officer; (2) she received and docketed the First Request; (3) all responsive documents were gathered and placed into an electronic folder that she had created; (4) on August 10, 2020, DHS issued a final response granting, denying, and granting in part and denying in part disclosure of the requested records as outlined above; (5) United appealed DHS's final response to OOR; and (6) she sent the appeal packet to DHS's legal counsel after receiving notification from OOR of the appeal.  See RR at 685a-87a.

[11] See OOR Docket No. 2020-1501 Exhibit 17 at 22-28; RR at 689a-95a.

11

submitted additional evidence in response to United's submissions. DHS noted that the scores were withheld under both Section 708(b)(10) and (26), and distinguished *Payne* because, in that case, DOH did not prove that the scores were either confidential or deliberative, whereas here, DHS provided an attestation demonstrating that the scores are deliberative. Nevertheless, in its discretion, DHS provided a copy of an unredacted document containing final scores to United. DHS also asserted that it conducted a reasonable search and acted in good faith, and provided a supplemental attestation from Kern explaining why an exhibit that should have been included in DHS's log of withheld records was not initially included therein.

On October 9, 2020, an OOR Appeals Officer issued a Final Determination disposing of United's appeal with respect to DHS's response to its First Request. In relevant part, the Final Determination states:

> As a preliminary matter, although [United] argues that Section 708(b)(26) of the RTKL does not apply because this is a grant rather than a procurement process, in *UnitedHealthcare of P[ennsylvania], Inc. v. P[ennsylvania Dep[artmen]t of Human Serv[ices*, 187 A.3d 1046 (Pa. Cmwlth. 2018)], the same parties litigated a RTKL request for records related to the same healthcare program which the Court noted was governed by Section 513 of the Procurement Code. Here, []Kern attests the RFA at issue was governed by Section 513 of the Procurement Code, and [United] is utilizing the sole remedy under the Procurement Code to submit a bid protest. Therefore, the records are subject to Section 708(b)(26) of the RTKL.

> \* \* \*

> Section 708(b)(26) shields from public disclosure evaluation committee scoring information. Section 708(b)(26) also shields from public disclosure any "other

12

records" used by an evaluation committee during the course of evaluations of competitively bid proposals. In support of its position, [DHS] relies on the affidavit of []Kern. . . .

* * *

Here, [DHS] attests that records responsive to [the items] of [United's First] Request constitute records of the evaluation committee's scoring of proposals received in response to the RFA or are records that were used by the evaluation committee during the course of its evaluation of such proposals. A review of the logs provided shows that records that were redacted include emails seeking clarification from applicants on their proposals, emails with answers to clarifications and clarification documents, emails regarding corporate references, and the selection memos for each zone. Records that were withheld include the applications themselves and documents used or created by the evaluation committee which identify a committee member, evaluator score sheets, evaluator workbooks, evaluation committee instructions/scoring guide, master score sheet, Final Documents for Submission to Procurement with messaging, amended Personnel Documents for [the RFA], and evaluation committee training PowerPoint presentations. [DHS] further attests that the contract associated with the RFA has not been awarded because negotiations with the selected offeror have not been completed. Additionally, [United] initiated a bid protest under the Procurement Code.

Under the RTKL, a sworn affidavit or statement made under the penalty of perjury may serve as sufficient evidentiary support. In the absence of any evidence that [DHS] has acted in bad faith or that the records exist, "the averments in [the evidence submitted] should be accepted as true." Therefore, based upon the evidence provided, [DHS] has met its burden of proving that the records identified as responsive to [the items] of the [First] Request are exempt from disclosure. However, [DHS] has, in its discretion, subsequently provided a partially unredacted version of the Grantee Selection Memo which

13

reveals the total scores for the selected applicants. Accordingly, the appeal as to the total scores is moot.

OOR Docket No. 2020-1501 Exhibit 28 at 9-10, 15-16 (citations omitted). Based on the foregoing, the OOR Appeals Officer issued an order denying in part, and dismissing as moot in part, United's appeal. *See id.* at 17.

United then filed the instant petition for review of the Final Determination in this Court,[12] arguing that (1) OOR erred in finding that the requested records were exempt from disclosure as predecisional deliberations under Section 708(b)(10) of the RTKL; (2) OOR erred in finding that DHS submitted competent evidence to support its nondisclosure of the redacted and withheld records; and (3) DHS failed to conduct a good faith search for documents that are responsive to United's First Request.

## III.

### A.

Regarding United's claim that OOR erred in finding that the requested records were exempt from disclosure as predecisional deliberations under Section 708(b)(10), as outlined above, OOR also found that each of the relevant requested records were also exempt under Section 708(b)(26). *See* OOR Docket No. 2020-1501 Exhibit 17 at 24-25, 27-28; RR at 691a-92a, 694a-95a. Moreover, and more importantly, United does not dispute this determination on appeal. As a result, even if it is assumed that United is correct with respect to its Section 708(b)(10) claim, any purported error in this regard is harmless because it does not affect the outcome

---

[12] "In an appeal under the RTKL from a final determination of [] OOR, the review exercised by this Court is plenary with respect to both questions of fact and law. This Court reviews [] OOR's orders independently and may substitute its own findings of fact for those of [] OOR." *Payne*, 240 A.3d at 225 n.6 (citation omitted).

14

of the appeal. *See, e.g.*, *Garner v. Pennsylvania Human Relations Commission*, 16 A.3d 1189, 1200 (Pa. Cmwlth. 2011) ("[R]eversible error requires the determination 'must not only be erroneous, but also harmful or prejudicial to the complaining party.' *D.Z. v. Bethlehem Area School District*, 2 A.3d 712, 726 (Pa. Cmwlth. 2010). '[A]n order of an administrative agency will not be disturbed for harmless error.' *Id.* at 725-26."); *Sturpe v. Unemployment Compensation Board of Review*, 823 A.2d 239, 242 (Pa. Cmwlth. 2003) (holding that errors contained in the Board's order as being "harmless" where they were found to "have no effect on this outcome"). Accordingly, United's claim in this regard is not a basis upon which we will disturb OOR's Final Determination.

**B.**

In addition, OOR did not err in concluding that DHS submitted sufficient evidence to support the nondisclosure of the redacted and withheld records in the First Request. As this Court has explained:

> Under the RTKL, an agency bears the burden of proving, by a preponderance of the evidence, that a record is protected from disclosure under one of the enumerated exemptions or contains privileged material. Section 708(a)(1) of the RTKL, 65 P.S. §67.708(a)(1)[.] A preponderance of the evidence is a finding "that the existence of a contested fact is more probable than its nonexistence."
>
> An agency may present sufficient evidence by the submission of affidavits.
>
> > Affidavits are the means through which a governmental agency . . . justifies nondisclosure of the requested documents under each exemption upon which it relied. . . . The affidavits must be detailed, nonconclusory, and submitted in good

15

faith. . . . Absent evidence of bad faith, the veracity of an agency's submissions explaining reasons for nondisclosure should not be questioned.

However, conclusory affidavits, standing alone, will not satisfy an agency's burden of proof under the RTKL. Moreover, the affidavit must be specific enough to permit OOR or a reviewing court to ascertain whether the claimed exemption applies to the records.

In addition to affidavits, an agency may justify its exemptions with an item-by-item indexing system, commonly referred to as a privilege or exemption log. Such a log "typically lists the date, record type, author, recipients, and a description of the withheld record. . . ." A log "can serve as sufficient evidence to establish an exemption, especially where the information in the log is bolstered with averments in an affidavit." "An index, even one containing minimal description, offers a tool for a fact-finder reviewing corresponding records."

*UnitedHealthcare*, 187 A.3d at 1059 (citations and footnote omitted).

As extensively and exhaustively outlined above, DHS presented both affidavits and an exemption log in support of the redactions made to records and the withheld records that were sought by United in the First Request. Upon review, it is clear that the affidavits and exemption log are not merely conclusory, but provide in detail the factual and legal bases for the exemptions and withholdings made by DHS in response to the First Request. United's failure to proffer any evidence of bad faith on DHS's part precludes our questioning the veracity of its affidavits and log supporting its nondisclosure of records. *See UnitedHealthcare*, 187 A.3d at 1059 ("Absent evidence of bad faith, the veracity of an agency's submissions explaining reasons for nondisclosure should not be questioned.") (citation omitted).

Moreover, as outlined above, the requested records were exempt under Section 708(b)(26), and United does not dispute this determination on appeal. As a

result, even if it is assumed that United is correct with respect to its claim under Section 708(b)(10), any purported error is harmless because it does not affect the outcome of this appeal. *See Garner*; *Sturpe*.

## C.

Finally, OOR did not err in failing to determine whether DHS conducted a good faith search for documents that were responsive to United's First Request. Section 901 of the RTKL requires an agency to "make a good faith effort to determine if the record requested is a public record . . . and whether the agency has possession, custody or control of the identified record, and to respond as promptly as possible under the circumstances existing at the time of the request." 65 P.S. §67.901.

As demonstrated by Bankes' affidavit, she determined which DHS program offices may have records responsive to the First Request, *see* OOR Docket No. 2020-1501 Exhibit 17 at 18-19, and sent the Request to the appropriate program office within DHS. *See id.* Those offices then searched for records and identified the responsive records, *see id.* at 19, Exhibit 24 at 6; and responsive records were in the possession of Kern. *See id.* at 10-14. Kern attested that she searched through all potentially responsive records to United's First Request. *See id.* at 8.

Nevertheless, United asserts that DHS did not make a good faith effort to find responsive records because DHS had produced a record in response to a different RTKL request that was not contained in the records that were responsive to United's First Request. *See* Brief of Petitioner at 35, 38. However, the record at issue was of a communication between Kern and a corporate reference, *see* OOR Docket No. 2020-1501 Exhibit 24 at 8, and United's First Request asked for

communications with another applicant, and not a corporate reference. *See id.* Exhibit 1 at 12. In addition, the record at issue was not responsive to any other record requested in the First Request. *See id.* at 11-12. United points to other records that were disclosed by DHS to other requests, *see* Brief of Petitioner at 35, but, again, those requests were not the same as United's First Request. *See id.* Exhibit 24 at 7.

United also relies upon the Recommendation Memorandum that was addressed to DHS's Director, and a bid protest sent to DHS's Secretary after the submission of the First Request and outside of its scope, to support its claim that a search was not conducted by all custodians of responsive records. *See* Brief of Petitioner at 37, 38. However, the Recommendation Memorandum was sent by Kern, *see* OOR Docket No. 2020-1501 Exhibit 24 at 15, and the bid protest was also sent to Kern. *See id.* Exhibit 27 at 110. In sum, although DHS had one oversight with respect to a corporate reference questionnaire, and given the scope of United's First Request, DHS acted in good faith by conducting a reasonable search to provide responsive records to the First Request. *See id.* Exhibit 24 at 6-7. Kern was identified as the "sole point of contact in the Commonwealth for [a]pplicants for th[e] RFA, *see id.* at Exhibit 1 at 34; she is the Issuing Officer for the procurement, *see id.* at Exhibit 24 at 10; and she attested that she is the custodian of the responsive records and searched for all of the responsive records. *See id.* at 8.

Again, United's failure to proffer any substantive evidence of bad faith on DHS's part precludes our questioning the veracity of its affidavits and log demonstrating its good faith search for responsive records. *See UnitedHealthcare*, 187 A.3d at 1059 ("Absent evidence of bad faith, the veracity of an agency's submissions explaining reasons for nondisclosure should not be questioned.") (citation omitted). *See also Department of Labor & Industry v. Earley*, 126 A.3d

355, 357 (Pa. Cmwlth. 2015) (holding that an agency's submission of affidavits in support of the nonexistence of a record was sufficient to establish it was not in possession of the requested record); *Moore v. Office of Open Records*, 992 A.2d 907, 909 (Pa. Cmwlth. 2010) (holding that the submission of both sworn and unsworn affidavits attesting that an agency was not in possession of a requested record was sufficient to satisfy an agency's burden that the record did not currently exist).

Moreover, again, as outlined above, the requested records were exempt under Section 708(b)(26), and United does not dispute this determination on appeal. As a result, even if it is assumed that United is correct with respect to its claim, any purported error is harmless because it does not affect the outcome of the appeal. *See Garner*; *Sturpe*.

Accordingly, OOR's Final Determination with respect to United's First Request is affirmed.

 

MICHAEL H. WOJCIK, Judge

Judge Covey did not participate in the decision of this case.
Judge Wallace did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

UnitedHealthcare of Pennsylvania, Inc.,  :
                                      :
                           Petitioner  :
                                      :
               v.                      : No. 1117 C.D. 2020
                                      :
Pennsylvania Department of Human          :
Services (Office of Open Records),        :
                                      :
                          Respondent  :

# **O R D E R**


AND NOW, this 15th day of December, 2022, the Final Determination of the Office of Open Records, dated October 9, 2020, at Docket No. AP 2020-1501, is AFFIRMED.


_____

MICHAEL H. WOJCIK, Judge